UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
:
AMERICAN TISSUE, INC., a Chapter 7 debtor, :
:
Plaintiff, :
:
-against- :
:
DLJ MERCHANT BANKING PARTNERS, II, L.P.; : 03 Civ. 6913 (GEL)
DLJMB FUNDING II, INC.; DLJ MERCHANT :
BANKING PARTNERS II-A, L.P.; DLJ : **OPINION AND ORDER**
FIRST ESC L.P.; DLJ OFFSHORE PARTNERS II, C.V.; :
DLJ EAB PARTNERS, L.P.; DLJ ESC II L.P.; DLJ :
DIVERSIFIED PARTNERS, L.P.; DLJ DIVERSIFIED :
PARTNERS-A, L.P.; DLJ MILLENNIUM PARTNERS, :
L.P.; DLJ MILLENNIUM PARTNERS-A, L.P., :
:
Defendants. :
:
------------------------------------------------------------------------x

Charles H. Lichtman and Brian G. Rich, Berger Singerman,
Fort Lauderdale, FL (Jeffrey Schreiber, Meister Seelig &
Fein LLP, New York, NY, of counsel), for plaintiff.

Bradley J. Butwin, Robert White, and Michael C. Keats,
O'Melveny & Myers LLP, New York, NY, for defendants.

GERARD E. LYNCH, District Judge:

On August 10, 2004, the Court granted in part defendants'[1] motion to dismiss the complaint filed by American Tissue, Inc. ("ATI"), striking ATI's common law malpractice, fiduciary duty, contract, and fraud claims, but permitting its statutory bankruptcy and state

---

[1] When the Court was considering that motion, the defendants were Donaldson, Lufkin & Jenrette Securities Corporation ("DLJSC"), various DLJ affiliates, and former DLJ employee Andrew Rush. As is discussed below, the parties have since removed DLJSC and Rush as defendants by stipulation.

debtor law claims to proceed.[2] The Court also granted ATI leave to replead two of the dismissed counts, but required that any amended complaint be filed by August 27, 2004. ATI v. DLJ Secs. Corp. (ATI I), 351 F. Supp. 2d 79 (S.D.N.Y. 2004). ATI sought and received two extensions to that deadline, the last to October 25, 2004, and finally filed a motion to amend the complaint on October 20, 2004. However, ATI did not submit the proposed amended complaint at that time; that document was finally submitted, out of time, as an attachment to ATI's reply memorandum, after defendants had submitted their opposition to the motion. On September 26, 2005, after a further round of briefing, the Court denied ATI's motion, ruling that it was unduly delayed, procedurally flawed, and substantively futile. ATI v. DLJ Secs. Corp. (ATI II), 233 F.R.D. 327 (S.D.N.Y. 2005). In closing, the Court noted:

> ATI initially filed a complex, indirect, and difficult to understand complaint, forcing defendants to file a complicated motion to dismiss, and the Court to write a 45-page opinion parsing ATI's claims. Rather than file an amended complaint that attempted to address the defects cited by the Court in certain of the counts stated in the initial complaint, ATI, after significant delay, responded with a proposal to file a completely new complaint, that restated the old claims in a manner that represented a significant departure from its original pleading, necessitating another round of briefing. Defendants and the Court cannot be expected to deal with a constantly shifting target, as plaintiff revises and re-revises its claims.

ATI II, 233 F.R.D. at 330. ATI now moves yet again for leave to amend its complaint. For the following reasons, that motion will be granted, but certain of the claims in the amended complaint will be dismissed.

Fed. R. Civ. P. 15(a) provides that where, as here, leave of court is required for an

---

[2] The bankruptcy and state debtor law claims are hereinafter referred to collectively as "the bankruptcy claims."

amendment to a party's pleading, such "leave shall be freely given when justice so requires." In Foman v. Davis, the Supreme Court described this standard as follows:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

371 U.S. 178, 181 (1962).

In its moving papers, ATI contends that there is no reason to deny leave to amend the complaint because the proposed amendment does nothing more than housekeeping, modifying certain language to reflect that ATI's bankruptcy has been converted from Chapter 11 to Chapter 7 (with Christine Shubert serving as trustee), and excising allegations relevant only to claims that this Court has previously dismissed. (Mot. at 2-3.) Repeatedly, ATI represents that the changes made to the complaint are not substantive, noting that "the amendment merely takes out factual material," that "[w]ith extremely limited exception, there are virtually no freshly written facts," and that the limited (and righteous) objective of the amendment is to "remov[e] extraneous material from the otherwise more complex and lengthy initial Complaint," which will "facilitate a better understanding of the case for the Court, ATI and [defendants]" and "in all respects further[] judicial economy." (Id.) If all this were true, then the Court would not hesitate to grant ATI's motion.

3

Defendants contend, however, that the proposed amendment has a "fundamentally different" purpose than that articulated by ATI (D. Mem. 1), and that contrary to the rhetoric in ATI's moving papers, it makes critical substantive changes to the complaint, including:

- Reinserting DLJ Securities Corporation ("DLJSC") as a defendant, even though the parties had previously stipulated to the removal of DLJSC from the caption on the basis that all claims against DLJSC had been dismissed with prejudice;

- increasing the request for damages on the bankruptcy claims from $14.8 million to $20 million; and

- abandoning factual allegations on which this Court specifically relied in ruling in ATI I that certain of the bankruptcy claims survived defendants' motion to dismiss.

(Id. at 1-3.) Defendants contend that these modifications should be rejected as untimely, unduly prejudicial to defendants, and substantively futile.

ATI's certification in its moving papers that no substantive changes to the complaint have been made is in fact deeply misleading. In its reply memorandum, ATI concedes that the proposed amendment seeks to reinstate DLJSC as a defendant (Reply 6), and to increase ATI's claim for damages from $14.8 million to $20 million (Reply 4). The reinsertion of a defendant, after that defendant was removed from the case by stipulation, and a 33% increase in the amount of damages requested, are without question substantive and material, and ATI's misrepresentation of the nature of the proposed amendment comes dangerously close to constituting bad faith. That alone could justify denial of ATI's motion to amend, particularly in light of the history of ATI's pleadings recited above. Ultimately, however, Rule 15 counsels that courts should make every effort to see that cases are resolved on the merits, and should freely allow amendments that permit a party to make the claims it believes it can support with

evidence, provided there is no prejudice to the opposing party. Accordingly, the Court turns to the merits.

With respect to the reinsertion of DLJSC as a defendant, defendants argue that this Court dismissed with prejudice all claims against DLJSC in its prior opinions in this case, that in the interim the parties stipulated that DLJSC was to be removed from the case caption to reflect that dismissal (Keats Decl. Ex. 1),[3] and that ATI's attempt to add DLJSC as a defendant is untimely given that the Fed. R. Civ. P. 16(b) order in this case specifies that the deadline for joining additional parties is February 3, 2006 (Keats Decl. Ex. 2).[4]  (D. Mem. 7-8, 11-12.)

However, the Court did not in fact "dismiss" the bankruptcy claims as against DLJSC. In ATI I, the Court did not attempt to sort out whether ATI had stated claims against any particular DLJ entity, and specifically noted that due to ATI's inconsistent use of "DLJ," it was unclear which DLJ entity was being sued on these counts. 351 F. Supp. 2d at 105 n.24. It is true that the parties subsequently proceeded as if all claims against DLJSC had been dismissed with prejudice, and indeed stipulated that DLJSC would be removed from the case caption for this reason. However, given the lack of any serious claim of prejudice due to the reinsertion of DLJSC, if ATI has a meritorious bankruptcy claim to assert against that entity now, the Court is prepared to entertain it. See Foman, 371 U.S. at 181 ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.").[5]

---

[3] That stipulation also removed as a defendant former DLJ employee Andrew Rush.

[4] ATI's motion to amend the complaint was served on defendants on February 9.

[5] For the same reason, and especially given that the proposed amendment was served on defendants only six days late, the Court will exercise its inherent authority to excuse technical

For essentially the same reason – lack of prejudice – the Court will allow ATI to amend and increase its claim for damages from $14.8 million to $20 million. To the extent that defendants mean to challenge the $20 million figure, they will have ample opportunity to do so at the summary judgment stage or at trial. See Judy-Philippene Inc. v. S/S Verazano Bridge, 805 F. Supp. 185, 187 (S.D.N.Y. 1992) (granting motion to amend claim for damages where "defendants will not be prejudiced by the amendment, because . . . they will have an opportunity to contest this amended figure in further proceedings"). Nor does the increase in the damages requested radically alter the order of magnitude of the case; accordingly, defendants cannot plausibly claim that the amendment would affect their litigation strategy. In any event, since nothing prevents a jury from awarding damages beyond those sought in the complaint if the evidence warrants such relief, see Fed. R. Civ. P. 54(c), allowing the amendment will not actually increase defendants' level of exposure.

The elimination of certain factual allegations from the prior complaint, however, does affect the case, albeit not to defendants' detriment. Defendants point out that the proposed amended complaint modifies or removes factual allegations on which this Court relied in upholding certain of ATI's bankruptcy claims – an intentional fraudulent conveyance claim under 11 U.S.C. § 548(a)(1)(A), and the analogous state claim under N.Y. Debt. & Cred. Law § 276 (collectively the "actual fraudulent conveyance claims") – in ATI I. In the original complaint, ATI alleged that defendants engineered the fraudulent transfer of $14.8 million from

---

non-compliance with its own scheduling order to permit ATI's joinder of DLJSC as a defendant after the deadline specified in the scheduling order.

ATI to DLJ[6] on the eve of ATI's bankruptcy. Specifically, the complaint alleged that defendants, through a series of misdealings that resulted in their acquisition of control of ATI, had an ATI affiliate – Super American Tissue, Inc. or "SATI" – engage in fraudulent capital equipment lease transactions with ATI that resulted in SATI receiving funds rightly belonging to ATI. SATI then used these funds to pay off a debt to DLJ previously incurred by ATI. (Id. ¶¶ 49-50, 57, 104.) This indirect method of payment was allegedly used to conceal ATI's repayment of the debt from ATI's other creditors. (Id. ¶¶ 49, 57.)[7]

In ATI I, the Court upheld the actual fraudulent conveyance claims on the basis of these allegations. 351 F. Supp. 2d at 104-08. After noting that these claims were to be measured against the heightened pleading standard of Rule 9(b), the Court held that ATI had adequately pled, among other things, the element of scienter – that ATI acted with intent to hinder, delay, or defraud its creditors. This holding was explicitly based on allegations that defendants exercised control over ATI during the relevant period:

> ATI alleges that DLJ, through [former DLJ employee Andrew] Rush's position on the [ATI] board of directors and otherwise, effectively exercised control over ATI such that its intent can be imputed to the debtor and transferor. While ATI will face an extremely high burden of proof to establish this level of managerial control, the allegations, however inartful, suffice to defeat a Rule 12(b)(6) motion.

Id. at 105 n.25. Based on all of the allegations in the complaint, the Court concluded that "the

---

[6] As this Court has previously observed, it is unclear in the original complaint which DLJ entity is alleged to have received the fraudulently transferred funds. ATI I, 351 F. Supp. 2d at 105 n.24.

[7] For a fuller account of the factual background of this case, the reader is directed to this Court's ATI I and ATI II opinions.

7

allegations pled in support of the federal and state claims for actual fraudulent conveyance suffice, *if barely*, to meet the requirements of Fed. R. Civ. P. 9(b)." Id. at 105 (emphasis added).

Contrary to ATI's representations, the proposed amended complaint makes substantial modifications to these claims. First, it alters the method by which ATI is alleged to have paid defendants; second, it omits most of the allegations of defendants' corporate control of ATI, which was the basis for the Court's holding that ATI had adequately pled scienter. First, while the proposed amended complaint still includes detailed allegations concerning the capital equipment lease scheme (Prop. Am. Compl. ¶¶ 25-28), it is now alleged that the fraudulent transfer payment came from ATI itself, and not as a result of that scheme, depriving the alleged scheme of any obvious relevance to ATI's bankruptcy claims. (Prop. Am. Compl. ¶¶ 29-30; Reply 6-7.)[8]

More importantly, as defendants point out (D. Mem. 1), the original complaint alleged that defendants, through the participation of DLJ employee Rush on ATI's board and otherwise, exercised control over ATI's operations. (Compl. ¶¶ 18, 39-42, 51, 52, 56, 57.) As previously noted, these allegations were important to the decision to uphold the actual fraudulent conveyance claims: The Court held that if ATI could prove that defendants controlled ATI such that *their* intent to defraud ATI's creditors could be imputed to ATI (which the Court noted would be difficult), then they could make out the critical element of scienter.

---

[8] Defendants suggest that the theory of liability in the original complaint on the fraudulent conveyance claims was not the capital equipment lease scheme, but rather that ATI directed third parties to pay SATI for ATI's goods, and that those funds were paid by SATI to defendants. (D. Mem. 1.) There is indeed some support in the original complaint for this interpretation. (Compl. ¶ 104.) But that is not the theory on which the Court sustained the claims, and in any event, neither theory is advanced as the basis of the fraudulent conveyance claims in the proposed amended complaint.

The Proposed Amended Complaint, for whatever reason, removes all of these allegations, including allegations that "DLJ . . . caus[ed] certain business decisions to be made that resulted in damaging ATI and all of its other investors and creditors" (Compl. ¶ 18); that a "Stockholders Agreement injected DLJ and the DLJ Holders even further into the management and operating affairs of ATI" (id. ¶ 40); that DLJ acted as a "director" of ATI (id. ¶ 51); that "DLJ was simultaneously mandating that it become warrant holders with significant rights to . . . involvement in the operation of ATI, evidenced by their director positions and the plain language of the Stockholders Agreement" (id. ¶ 52); that DLJ "placed itself into a director/management position with an onerous shareholder agreement, and . . . approved an equipment lease scheme through the shell corporate structure it created, so that SATI . . . could pay DLJ" (id. ¶ 56); and most critically, that DLJ employee Rush, "while serving as a director of ATI and its affiliates, personally oversaw and demanded [the fraudulent transfer of money to DLJ] on behalf of and for the benefit of DLJ" (id. ¶ 57). While the proposed amended complaint includes allegations that defendants, through Rush's participation on ATI's board and otherwise, had a significant level of *knowledge* about or *access* to ATI (Prop. Am. Compl. ¶¶ 22, 31, 32), there is no direct allegation of *managerial control*. The closest that the proposed amended complaint gets is to allege, in discussing the capital equipment lease scheme (no longer how ATI fraudulently transferred funds to defendants), that "with DLJ's express knowledge of and assistance in structuring the equipment lease transactions referred to above, as well by reason of placing Andrew Rush (a DLJ employee) into ATI as a director, and DLJ having full access to ATI and its affiliates financial books and records; funds properly belonging to ATI were used to pay DLJ." (Id. ¶

9

28.)[9]  That is not an allegation of control.

Without some explanation, the removal of the express allegations of control in the complaint constitutes an abandonment of that theory. ATI provides no such explanation, telling the Court neither that it erred in excising the control allegations, nor that scienter is adequately pled despite the deletions. Instead, ATI addresses the legal sufficiency of the actual fraudulent conveyance claims in conclusory fashion, simply citing to a case emphasizing the "liberal" review of fraud claims in the bankruptcy context, referring without discussion to large swaths of the complaint and the section of the ATI I opinion discussing the previous version of these claims, and claiming that whatever is in the proposed amended complaint is enough:

> [W]e refer the Court to pages 40-45 of its Opinion and Order, and if anything, we add clarity now, since the pleading is focused on the issue of intent to hinder and delay creditors, relevant to certain of these bankruptcy claims. Thus, ATI refers the Court to paragraphs 18 through 45 of the amended complaint which sets forth more than sufficient facts for DLJ to understand the claims and to be able to defend same.

(Reply 7; see also id. at 9 ("DLJ ignores the fact that paragraphs 1-32 [the entire factual predicate] of the amended complaint provides a detailed version of the 'actual intent'

---

[9] The proposed amended complaint also alleges that DLJ "directed" SATI to enter into the capital equipment leases (the analogous sentence in the original complaint stated that DLJ "acquiesced in" SATI entering into these transactions (Compl. ¶ 50)). (Prop. Am. Compl. ¶ 25.) That is not an allegation of control. To "direct," or to command or order, someone to do something, is one thing; to have the authority or control required to give such "direction" force, is another, and control is the critical issue here. In any event, ATI no longer alleges that the fraudulent transfer of funds to defendants resulted from the capital equipment leases, and even if it did, the cryptic change of "acquiesced in" to "directed" in a single allegation would be insufficient to signal an allegation of control.

10

element.").[10]

This is unacceptable. ATI, represented by sophisticated counsel, cannot eliminate factual allegations critical to its claims in a proposed amendment, act as if nothing has happened, and expect the Court to permit that amendment without question. Moreover, by abandoning the allegations on which the Court relied in sustaining the claims against defendants' motion to dismiss, ATI necessarily puts at issue not only whether leave to amend should be granted or denied, but whether the claims previously sustained should now be dismissed, an issue on which ATI clearly has had adequate notice and opportunity to be heard. As to the abandonment of the critical control allegations, ATI itself, for whatever reason, removed those allegations from the complaint. Moreover, defendants clearly pointed out in opposition to ATI's motion that "the proposed amended complaint abandons the core allegations upon which the Court relied in sustaining Plaintiff's remaining fraudulent conveyance claims . . . . Specifically, this Court sustained Plaintiff's fraudulent conveyance claims based on the allegations that [inter alia] the Defendants controlled Plaintiff . . . . The proposed amendment omits [that] allegation." (D. Mem. 1.) As to the ultimate question of whether ATI's claims, without the control allegations, should be dismissed, every motion to amend carries the risk of denial for futility – that the claims as alleged are deficient and would be dismissed even if leave to amend were granted. See Foman v. Davis, 371 U.S. at 181; Credit Suisse First Boston v. Intershop Comm'ns AG, 407 F. Supp. 2d 541, 546, 551 (S.D.N.Y. 2006). Under the circumstances, ATI was on notice that the

---

[10] ATI's explanation for abandoning the assertion that the capital equipment lease scheme was used to fraudulently transfer the funds at issue to DLJ is equally unsatisfying. In its reply memorandum, ATI does (appear to) acknowledge that its theory has changed, but it simply dismisses in conclusory fashion any potential relevance of that change to the legal sufficiency of its claims. (Reply 6-7.)

sufficiency of its actual fraudulent conveyance claims was under challenge. Yet it failed to offer a persuasive defense of those claims.

Therefore, while ATI's motion to amend the complaint will be granted, because ATI has abandoned the control allegations upon which the Court previously sustained its actual fraudulent conveyance claims, and because it fails to address with any seriousness the legal sufficiency of those claims as amended, see, e.g., Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived . . . ."); First Capital Asset Mgmt., Inc. v. Brickellbush, Inc., 218 F. Supp. 2d 369, 393 (S.D.N.Y. 2002) (holding plaintiff's failure to address defendants' personal jurisdiction objection in memorandum of law rendered issue waived), those claims are hereby dismissed with prejudice.[12]

## CONCLUSION

For the foregoing reasons, while ATI's motion to amend the complaint is granted, but the actual fraudulent conveyance claims (Counts I and V in the newly amended complaint) are hereby dismissed with prejudice.

SO ORDERED.

Dated: New York, New York
April 20, 2006

GERARD E. LYNCH
United States District Judge

---

[12] Defendants do not object to the proposed amended complaint to the extent that it simply updates the complaint to reflect ATI's Chapter 7 status and the appointment of Christine Shubert as trustee. Likewise, the proposed amended complaint adequately pleads claims of *constructive* fraudulent conveyance (which require no allegation of fraudulent intent, and need not be pleaded with particularity), and defendants do not seriously claim otherwise. (D. Mem. 14-15.)

12